```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF ILLINOIS
              EASTERN DIVISION
```

| | |
|---|---|
| **VLM FOOD TRADING INTERNATIONAL, INC.,** | |
| Plaintiff, | Case No. 12 C 8154 |
| v. | Hon. Harry D. Leinenweber |
| **ILLINOIS TRADING CO.,** *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court for decision are the merits hearing record and post-hearing briefing of Plaintiff VLM Food Trading, International, Inc. and Defendants Illinois Trading Company, Lawrence Oberman, Obee Family Partnership, and FJ Management (d/b/a TAB Bank).

For the reasons stated herein, the Court finds in favor of Plaintiff VLM Food Trading International, Inc. on Counts I-IV and awards the Summ of $200,672.88 plus attorneys' fees. The Court finds against VLM with respect to Count V. The Court enters the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

### I.   BACKGROUND

Plaintiff, VLM Food Trading International, Inc. ("VLM") is a seller of wholesale quantities of produce. Defendant Illinois Trading Company ("ITC") is a business that purchases wholesale

amounts of produce from suppliers and resells such produce to other distributors or retailers. Defendant Lawrence N. Oberman ("Oberman") was the President of ITC at all relevant times. It is undisputed that ITC ordered thousands of pounds of frozen potatoes from VLM for which it failed to pay.

The sale of frozen potatoes and other perishable goods is regulated by the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* (the "PACA"). PACA was enacted originally to protect produce sellers during the Great Depression by "suppress[ing] unfair and fraudulent practices in the marketing of fruits and vegetables in interstate and foreign commerce." 49 Fed. Reg. 45737. Accordingly, it requires produce dealers to make "full payment promptly" for any produce they purchase. 7 U.S.C. § 499(b)(4).

Under certain circumstances, PACA allows produce sellers to establish a constructive, non-segregated "floating" trust over funds owed for sales on short-term credit and to recover against a responsible shareholder of the debtor company.

On October 10, 2012, VLM filed suit against ITC, Oberman, and The Obee Family Partnership (an Illinois entity which was in a position to control ITC). In its initial Complaint, VLM alleged two claims under PACA, and state law claims for breach of contract and breach of fiduciary duty. ECF No. 1.

On October 11, 2012, VLM filed a Motion for a Temporary Restraining Order (the "TRO") seeking to prevent ITC, Oberman and the Obee Family Partnership from dissipating the assets held in their PACA trust. After a brief hearing, the Court granted VLM's TRO and required Defendants to deposit $197,387.78 in the Court's Registry. ECF No. 11. Five (5) days after the TRO was entered, ITC filed a Motion to Vacate the TRO. The Court disagreed with the arguments set forth in Defendants' Motion, but continued the Motion until the Preliminary Injunction Hearing set for November 6, 2012.

On October 22, 2012, VLM filed an Amended Complaint, adding Defendant FJ Management (d/b/a TAB Bank), and adding a count against all Defendants (including TAB Bank) for unlawful retention and conversion of PACA trust assets. In the Amended Complaint, VLM contends that TAB Bank and Defendants entered into a security agreement where TAB Bank would lend funds to Defendants in exchange for a security interest in all of ITC's assets, including ITC's inventory and accounts receivable. VLM alleges that Defendants defaulted on this security agreement in approximately September 2012. When this occurred, TAB Bank exercised its rights as a secured creditor and took possession of Defendants' PACA trust assets – namely, $445,000 of proceeds from ITC's deposits and $260,000 of ITC's inventory. VLM claims that TAB Bank knew or should have known that these assets were generated through the sale of produce and were part of a PACA trust. Based on these facts,

VLM alleges that TAB Bank has unlawfully retained and converted funds from ITC's PACA trust. In its Answer to VLM's Amended Complaint, TAB Bank admitted that it had an agreement with ITC, but denied the remainder of VLM's allegations. *See* ECF No. 40 at 13-17.

On November 6, 2012, Defendants represented that the parties were engaging in settlement discussions. Because of this, Defendants requested the Court continue the preliminary injunction hearing. The Court agreed to do so and postponed the hearing until November 26, 2012.

However, on November 19, 2012, counsel for Defendants ITC, Oberman, and Obee Family Partnership (hereinafter "the ITC Defendants") filed a Motion to Withdraw citing irreconcilable differences. The Court granted counsel's Motion, extended the TRO, continued the hearing until January 15, 2013 and gave the ITC Defendants until December 18, 2012 to obtain new counsel. *See* ECF No. 41.

On January 9, 2013, after the ITC Defendants failed to obtain new counsel and answer VLM's Complaint, VLM moved for default judgment. On January 15, 2013, Defendants appeared in Court without counsel still having not answered VLM's Complaint. In light of these facts, the Court granted VLM's Motion for Default, consolidated the preliminary injunction hearing to a merits hearing, and set the hearing for February 19, 2012.

On February 5, 2013, Defendants obtained new counsel and moved to vacate the entry of default judgment. The Court granted this motion only as to Oberman personally.

On February 14, 2013, the ITC Defendants answered VLM's Complaint. Shortly thereafter, VLM moved for judgment as a matter of law and TAB Bank moved to continue the hearing set for February 19, 2013.

On February 19, 2013, this Court denied VLM's Motion for Judgment as a Matter of Law because an issue remained with respect to whether the ITC Defendants were required to pay attorneys' fees and interest. The Court denied TAB Bank's Motion for a Continuance and proceeded to hear testimony.

## II. DISCUSSION

PACA provides that perishable agricultural commodities received by a licensed dealer, as well as the proceeds from sales of those commodities, are held in trust for the benefit of unpaid suppliers until full payment has been made. 7 U.S.C. § 499e(c)(2). This trust is automatically created when the dealer accepts the goods so long as the supplier adheres to the notice requirements set forth in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f). *Greg Orchards & Produce, Inc. v. Roncone,* 180 F.3d 888, 890-91 (7th Cir. 1999). PACA trust rights "take priority over the interests of all other creditors, including secured creditors." *Patterson Frozen*

*Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669 (7th Cir. 2002).

PACA trust rights can be enforced through a court action for breach of fiduciary trust. 7 U.S.C. § 499e(c)(5). Such an action permits recovery against "both the corporation and its controlling officers." *Id.* In exchange for these protections, PACA establishes strict eligibility requirements.

The ITC Defendants admit that they are "brokers" under PACA. *See* Defs.' Answer to Pl.'s First Amend. Compl. at 2. VLM presented its PACA license and provided testimony that it has had a valid PACA license since July 13, 2001. *See* ECF No. 54-1; *See* Ct. Tr. 2/19/13 at 64. The ITC Defendants' admitted that they owe VLM for the unpaid invoices. Thus, the Court finds VLM has established that the ITC Defendants are liable for at least $184,987.00 (the principal amount of the unpaid invoices). The remaining issues before the Court are whether the ITC Defendants are liable for attorneys' fees and interest and whether Defendant Oberman is personally liable for the debt.

### A. Attorneys' Fees

VLM contends it is entitled to attorneys' fees because the invoices it sent to ITC included a provision that obligated ITC to pay such fees and to pay interest. In relevant part, the provision states:

> The perishable agricultural commodities listed on this invoice are sold subject to the

> statutory trust authorized by section 5c of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities until full payment is received. Interest shall accrue on any past-due account balance at the rate of 1.5% per month (18% per annum). Buyer agrees to pay all costs of collection, including attorney's fees.

Pl.'s Ex. B; ECF No. 1-1, Page ID # 10.

The ITC Defendants claim that this provision is not enforceable because (1) the United Nations Convention on Contracts for the International Sales of Goods controls the transactions at issue; and (2) even if the Uniform Commercial Code governs the dispute, VLM's invoices were counteroffers or proposals for additional terms and were not part of the contract that existed between the parties.

### 1. *Findings of Fact*

ITC and VLM engaged in transactions beginning in at least June 2012. In these transactions, VLM delivered produce (namely, frozen potatoes) to ITC. The sequence of the parties' transactions were as follows. First, ITC would submit a Purchase Order to VLM which described the item it sought to purchase, the quantity it needed, the rate it was willing to pay, and the place of delivery. After receiving this Purchase Order, VLM would determine whether it could fill the order. Assuming it could, VLM sent ITC a Consolidated Sales Confirmation via email that confirmed the product to be shipped, the price, and the shipping terms. After ITC agreed to

these terms, VLM would ship the produce pursuant to the delivery schedule stated in the Purchase Order and confirmed in the Consolidated Sales Confirmation. Immediately after shipping the produce, VLM sent an invoice to ITC. The invoice listed the quantity and description of the produce shipped, the price, the delivery location and date, and the aforementioned provision regarding attorneys' fees.

From June 26, 2012 through July 27, 2012, VLM and ITC engaged in nine separate transactions pursuant to the steps described above. In all nine of these transactions, ITC received an invoice (which included the attorneys' fee provision at issue) and paid the invoice in its entirety.

However, from July 31, 2012 through September 24, 2012, the parties had nine additional transactions where ITC failed to pay VLM. It is undisputed that ITC received an invoice for all transactions - paid or unpaid - that included the attorneys' fee provision.

While TAB Bank attempted to adduce an offer of proof that challenged the validity of VLM's PACA license, the Court denied this offer. The Court finds the copy VLM's PACA license and the testimony from VLM Vice President Witold Filemonowicz persuasive in determining that VLM has had a valid PACA license since July 2001. See ECF No. 54-1; Ct. Tr. 2/19/13 at 62-64. Thus, the Court finds

VLM and ITC had valid PACA licenses at all relevant times in this dispute.

## *2. Conclusions of Law*

### *a. United Nations Convention on Contracts for the International Sales of Goods*

The ITC Defendants argue that the United Nations Convention on Contracts for the International Sales of Goods (the "CISG") governs this case because VLM has an office in Montreal, Canada. The ITC Defendants argue that since the CISG controls, the attorneys' fee provision on VLM's invoices is unenforceable.

The CISG became effective in the United States on January 1, 1988. *See* 15 U.S.C.A. App. at 332 (1998). Its purpose is "establishing substantive provisions of law to govern the formation of international sales contracts and the rights and obligations of the buyer and seller*." Usinor Industeel v. Leeco Steel Products, Inc.*, 209 F.Supp.2d 880, 884 (N.D. Ill. 2002). It applies to "contracts of sale of goods between parties whose places of business are in different [nation] States . . . when the [nation] States are Contracting States." *Id.* citing 15 U.S.C.A.App. Art. 1(a). As the courts in this Circuit have noted, "federal case law interpreting and applying the CISG is scant." *Ajax Tool Works, Inc. v. Can-Eng Mfg. Ltd.*, No. 01-C-5938, 2003 WL 223187 at *2 (N.D. Ill. Jan. 30, 2003). Because of this, this Court is

authorized to interpret the CISG in accordance with its general principles. *See Usinor Industeel*, 209 F.Supp.2d at 884.

The ITC Defendants argue that the CISG governs the transactions at issue because VLM Vice President Witold Filemonowicz testified that "the communications concerning the transaction[s] at issue . . . [were] done out of the Montreal office [and] the invoices were sent by the Montreal office." Defs.' Trial Brief at 5. The Court does not find this evidence sufficient to conclude that the CISG trumps the Uniform Commercial Code (the "UCC") and PACA.

In *Food Team International, Ltd. v. Unilink, LLC, et al.*, a case factually similar to the one at bar, the defendant argued that the CISG applied to the plaintiff's PACA claims, and specifically applied to an attorneys' fee provision because the produce that the plaintiff shipped was from China and the contracts were negotiated by one of plaintiff's agents in China. *Food Team International, Ltd. v. Unilink, LLC, et al.*, 872 F.Supp.2d 405, 414 (E.D. Penn. May 18, 2012). In rejecting this proposition, the court noted that the "defendant failed to provide an explanation of how those facts mandate[d] the application of the CISG and the displacement of the PACA and UCC Article 2." *Id.*

The Court finds the same is true here. First, Defendants provide only one case to support their argument, *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F.Supp.2d 426 (S.D.N.Y. 2011).

Unlike *Food Team*, *Hanwha* did not involve PACA claims and instead addressed the issue of whether the language in the parties' contract had effectively caused them to opt-out of the CISG. *Id.* at 430. Moreover, in *Hanwha*, the plaintiff was a Korean corporation and there was no discussion whether Hanwha even had an office in the United States. *Id.* at 428-431.

In this case, it is undeniable that the VLM has an office in Canada. *See* Amend. Compl. at 1. However, VLM's PACA license expressly provides a business address in Jersey City, New Jersey. *See* ECF No. 54-1. The Court finds this evidence persuasive in determining that VLM has "a place of business" in the United States, and was "contracting" in the United States for the transactions at issue. *See* 15 U.S.C.A.App. Art. 1(a). The Court rejects Defendants' argument that the place of negotiations and the place where the invoices were sent are dispositive. Thus, the Court concludes PACA and the UCC control.

### b. *The UCC and the Attorneys' Fees and Interest Provision*

The ITC Defendants argue in the alternative that even if the UCC applies, the attorneys' fees and interest provision in VLM's invoices is unenforceable because this provision was an additional term added to the contract between the parties. Defendants cite a bankruptcy case, *G&G Peppers, LLC v. Ebro Foods, Inc.*, as support.

*G&G Peppers, LLC v. Ebro Foods, Inc.*, 424 B.R. 420 (Bankr. N.D. Ill. 2010).

Prior to analyzing the aforementioned case, the Court points out that this case was reversed nearly two years ago. In fact, the portion of the case that was reversed by the district court was the bankruptcy court's finding denying attorneys' fees. *See G&G Peppers v. Ebro Foods*, 449 B.R. 759, 767 (N.D. Ill. 2011) (stating that the "bankruptcy court's decision that G&G failed to preserve its PACA trust is affirmed, while its decision denying G&G's request for attorney fees is reversed and remanded for determination of a reasonable attorney fee award."). Thus, the Court finds Defendants' reliance on this case entirely inappropriate. Indeed, careless submissions of this kind tip-toe around the line of Rule 11. In this instance, the Court will give Defendants the benefit of the doubt and assume that the relatively short deadline to submit a trial brief caused their less than thorough inquiry.

Setting aside this error, the Court addresses briefly the merits of Defendants' argument. In *Brutyn, N.V. v. Anthony Gagliano Co., Inc. et al.*, a district court addressed the issue of whether an attorneys' fees and interest provision on an invoice was enforceable in a plaintiff's PACA claim. *Brutyn, N.V. v. Anthony Gagliano Co., Inc. et al.*, No. 04-C-527, 2007 U.S. Dist. LEXIS

48008 (E.D. Wis. July 2, 2007). In finding it was, the court noted:

> I am satisfied that reasonable attorney's fees and interest should be awarded to Brutyn [plaintiff]. This is because the attorney's fees language appeared on each and every transaction, and at no point during the time in which the parties were doing business did AGCI [defendant] object to such term. Based upon AGCI's failure to object to the inclusion of the term, AGCI accepted such term.

*Id.* at *56.

The Court finds the same is true here. At the hearing, Defendants presented testimony from ITC's former bookkeeper. On cross-examination, she testified that she received the invoices from VLM and noticed the fee provision on each and every invoice VLM sent to ITC. She also admitted that she never objected to the provision and was unaware of anyone else from VLM who did. Ct. Tr. 2/19/13 at 129-130. Similarly, Mr. Oberman testified that he did not object to the provision. Thus, the Court concludes that the ITC Defendants "accepted the risk that if there was a dispute concerning the amount owed" and they were held liable, they would incur the reasonable attorney's fees. *Brutyn, N.V.*, 2007 U.S. Dist. LEXIS 48008 at *57.

Additional support lies in the PACA statute itself. PACA permits the recovery of attorneys' fees and interest where the parties have contemplated for such terms. Indeed, if Congress intended to limit PACA claims solely to the price of commodities,

it could have included language reflecting that limitation in 7 U.S.C. §499e(c)(2). Instead, a fair reading of the statute permits attorneys' fees and interest which are contractually due within the scope of the statute's protection of "full payment owing in connection with the transaction." 7 U.S.C. § 499e(c)(2).

Finally, the Court rejects Defendants' argument that the attorneys' fee provision is unenforceable because it added a material term to the parties' established contract. Instead, the Court concludes that VLM's practice of including this provision on its invoices is standard practice in the produce supplier industry. Because of this conclusion, the ITC Defendants cannot claim that such a provision was a material alteration that caused an unreasonable surprise.

The Court finds support for such a conclusion in Section 2-207 of the UCC. In relevant part, Section 2-207 provides:

> [A]dditional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits accepts to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

810 ILCS 5/2-207.

In this case, the parties are merchants who engage in the sale of produce. Furthermore, the Court has already concluded that

Defendants failed to object to ITC about the provision. Thus, the only issue is whether the fee provision is a material alteration.

"In Illinois the test for whether an additional term would be a material alteration to the contract is whether the addition constitutes unreasonable surprise to one of the bargaining parties." *Jada Toys, Inc. v. Chicago Import*, No. 07-C-699, 2009 WL 3055370 at *8 (N.D. Ill. Sept. 18, 2009.). In light of the testimony provided by Mr. Oberman regarding the number of invoices ITC received from other suppliers with similar fee provision language on invoices and the testimony from Mr. Filemonowicz regarding his experience that such practice is standard in the industry, the Court concludes that Defendants cannot claim that this provision was an unreasonable surprise. *See* Ct. Tr. 2/19/13 at 42-48, 75-76. Thus, the Court finds the attorneys' fees and interest provision enforceable.

### B. Mr. Oberman's Personal Liability

VLM argues that the Court should find Mr. Oberman personally liable for the PACA claims. After the ITC Defendants obtained new counsel, this Court vacated the default judgment only against Mr. Oberman personally. Thus, a liability issue remains only with respect to him.

#### *1. Findings of Fact*

It is undisputed that Lawrence Oberman was the President of ITC at the time of the transactions at issue. *See* Defs.' Trial

Brief at 2; *see also* Ct. Tr. 2/19/13 at 20. Furthermore, the ITC Defendants admitted that Mr. Oberman is an officer, director, or person in a position to control ITC. *See* ECF No. 58 at 2. Based on ITC's admissions and Oberman's testimony, the Court also finds Oberman had the authority to direct payments from ITC's PACA trust assets and was the person in charge of determining which suppliers got paid and which did not. *See* Ct. Tr. 2/19/13 at 139.

### *2. Conclusions of Law*

The Court concludes that Mr. Oberman is personally liable under PACA. In determining whether an individual is personally liable the Court must determine: "(1) whether an individual's involvement with the company was sufficient to establish a legal responsibility; and (2) whether the individual breached a fiduciary duty to the PACA creditors." *Sato & Co., LLC v. S & M Produce, Inc.*, 859 F.Supp.2d 923, 927-28 (N.D. Ill. 2012).

In analyzing an individual's involvement in a corporation, courts examine a variety of factors. *Id.* Such factors include whether an individual (a) was a director of the corporation; (b) had a role in causing a breach of trust; (c) had control of the day-to-day operations; (d) was active in the management of the company; and (e) signed for company accounts. *Id.* Based on the previously stated findings of fact regarding Mr. Oberman's role at ITC, the Court concludes his involvement is sufficient to establish legal responsibility.

In determining whether an individual breached a fiduciary duty under PACA, courts have routinely held that paying other creditors and dissipating assets of PACA trust funds constitutes a breach. *See, Anthony Marano Co. v. MS-Grand Bridgeview, Inc.*, No. 08 C 4244, 2010 WL 5419057 (N.D. Ill. Dec. 23, 2010). Indeed, the federal regulations define "dissipation" of trust assets as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. 46.46(a)(2).

VLM adduced evidence of ITC's accounts payable. Such evidence revealed that Mr. Oberman paid a phone bill and three other creditors after the TRO was entered. *See* Ct. Tr. 2/19/13 at 37; *see also* Pl.'s Ex. 9 at 1. The payment of ordinary business expenses constitutes a violation of fiduciary duties to unpaid PACA creditors. *Anthony Marano Co.*, 2010 WL 5419057 at *8. Thus, the Court concludes Oberman breached his fiduciary duty and is personally liable for VLM's PACA claims.

### C. Count V

Count V of VLM's Complaint alleges that TAB Bank is liable for the unlawful conversion and retention of PACA trust assets. As previously mentioned, TAB Bank denied all allegations that it took possession or control over ITC's assets. At the hearing, VLM failed to present any evidence or testimony to refute TAB Bank's

denial. Additionally, VLM has not presented any arguments regarding TAB Bank's liability in its post-hearing brief. Thus, the Court cannot make any findings of fact or conclusions at law with respect to this claim. Accordingly, the Court finds in favor of TAB Bank with respect to Count V.

### IV. CONCLUSION

For the reasons stated herein, the Court finds for VLM on Counts I-IV of the Complaint, and awards VLM the sum of $200,672.88 plus attorneys' fees and any other interest which has accrued since February 19, 2013. The Court finds in favor of TAB Bank with respect to Count V. The Court directs VLM to submit its fee petition by April 1, 2013. Defendants are permitted until April 29, 2013 to file a response challenging the reasonableness of VLM's fees. If VLM chooses, it will have until May 6, 2013 to file a reply.

**IT IS SO ORDERED.**

      Harry D. Leinenweber, Judge
      United States District Court

Date:3/5/2013