IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VLM FOOD TRADING INTERNATIONAL, INC., | |
| Plaintiff, | |
| v. | Case No. 12 C 8154 |
| ILLINOIS TRADING CO., *et al.*, | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff VLM Food Trading International's (hereinafter, "VLM") fee petition. For the reasons stated herein, the Court awards a total of $94,934.27 in fees.

## I.  BACKGROUND

The Court presumes familiarity with its March 5, 2013 opinion and therefore declines to provide an extensive factual background of the case. Instead, the Court only provides those facts relevant for the instant fee petition.

On October 12, 2012, VLM filed suit against Defendants Illinois Trading Company ("ITC"), ITC's President Lawrence N. Oberman ("Oberman"), and The Obee Family Partnership (an Illinois entity which was in the position to control ITC). In its initial Complaint, VLM alleged two claims under the Perishable

Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* (the "PACA") and two state law claims for breach of contract and breach of fiduciary duty. On October 22, 2012, VLM filed an Amended Complaint, adding Defendant FJ Management (d/b/a TAB Bank), and adding a fifth claim against all Defendants for unlawful retention and conversion of PACA trust assets.

After a merits hearing and post-trial briefing, the Court found in favor of VLM on Counts I-IV and found in Defendants' favor on Count V. In its ruling, the Court determined VLM was entitled to attorneys' fees, and directed VLM to submit a fee petition. The Court then granted Defendants twenty-eight days to object to the reasonableness of those fees. *See, VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, No. 12 C 8154, 2013 U.S. Dist. LEXIS 29791 at *21 (N.D. Ill. Mar. 5, 2013). While VLM filed a timely fee petition, Defendants failed to file any objections within the allotted time. Despite this failure, the Court granted Defendants an additional two weeks to file objections. ECF No. 90. Pursuant to this Order, Defendants filed their objections on May 13, 2013. VLM filed its reply on May 20, 2013.

On July 5, 2013, Defendants filed a Motion requesting that the Court determine the amount of attorneys' fees. Incredibly, when Defendants presented their Motion on July 10, 2013, they informed the Court that they needed a ruling on the issue the

- 2 -

very next day because Defendant Oberman was trying to close on the sale of his residence. While the Court has granted this request, it is baffling to think why an attorney would wait until the eleventh hour to demand that the Court issue a ruling the very next day. Conduct of this nature demonstrates a complete lack of respect regarding this Court's schedule and docket. While Defendants may believe this case is the only case or the most important case before the Court, these assumptions are simply inaccurate. Accordingly, while the Court will now proceed with the reasonableness of VLM's fees and costs, it notes that future requests of this nature will not be accommodated.

## II.  **LEGAL STANDARD**

PACA mandates that perishable agricultural commodities received by a merchant, dealer, or broker as well as the sales proceeds from such commodities, be held in trust for the benefit of unpaid suppliers "until full payment of the sums owing in connection with such transactions has been received." 7 U.S.C. § 499e(c)(2). With respect to whether a prevailing party is entitled to attorneys' fees under PACA, courts have held that "where the parties' contracts include a right to attorneys' fees, they can be awarded as sums owing in connection with perishable commodities transactions under PACA." *C.H. Robinson Worldwide, Inc. v. Auster Acquisitions*, No. 11-C-105, 2011 U.S. Dist. LEXIS 4808174 at *6 (N.D. Ill. Oct. 11, 2011) (citations omitted).

The Seventh Circuit distinguishes contractual-fee shifting provisions from statutory fee-shifting provisions. *See*, *e.g.*, *Matthews v. Wisconsin Energy Corp.*, 642 F.3d 565, 572 (7th Cir. 2011). The standard on whether to award fees in a contractual fee-shifting case is a "commercially-reasonable standard and does not require courts to engage in detailed, hour-by-hour review of a prevailing party's billing records." *Id.* (citations omitted).

## III.  ANALYSIS

VLM's Petition seeks $108,954.87 in attorneys' fees, costs, and witness travel expenses. Defendants object to the reasonableness of a substantial portion of the entire Petition. They do not dispute the reasonableness of VLM's counsel's hourly rate, and instead argue that the number of hours claimed are "unreasonable, unnecessary, excessive, and inadequately documented." Defs.' Opp. and Objection to Pl.'s Fee Pet. at 8. While Defendants neglect to apply the applicable commercial reasonableness standard in raising these objections, the Court will nevertheless address each in turn. *See Matthews*, 642 F.3d at 572.

### A.  Unnecessary Hours

Defendants claim a number of hours in VLM's Petition should be struck because such hours were unnecessary in the instant

suit. Specifically, they argue the hours relating to VLM's (1) planned intervention in the *Endico* action; (2) application for a temporary restraining order; and (3) PACA claims procedure were unnecessary. The Court will address each in turn.

### 1. *Endico Action*

VLM seeks $2,469.50 for the 10.8 hours it spent reviewing the docket of another PACA case filed against Defendant ITC in the Southern District of New York. *See Endico Potatoes, Inc. v. Illinois Trading, Co., et al.*, No. 12-C-7090 (S.D.N.Y. Sept. 20, 2012). Eventually, this case settled on October 10, 2012. VLM claims it spent that time researching and preparing a motion to intervene and preparing a letter to the court in New York. However, it is undisputed that VLM never intervened in the New York case. As a result, the Court finds these 10.8 hours unnecessary and subtracts $2,469.50 from the fee award.

### 2. *VLM's Application for a TRO*

Next, Defendants object to the 29.3 hours VLM spent in researching and preparing the temporary restraining order ("TRO") issued in this case. Defendants contend that because a preliminary injunction was entered in the *Endico* action on October 11, 2012 there was no reason for VLM to file a TRO in this action. VLM responds that the court in the New York terminated the case (and thus terminated the injunction) on

October 11, 2012. It provided the New York court's order "discontinuing the case." Pl.'s Reply, Ex. B at 3, ECF No. 102-2, Page ID# 1101. In light of this, the Court finds the 29.3 hours VLM spent on preparing the TRO and its response to Defendants' Motion to Vacate the TRO reasonable. As such, the Court declines to subtract this amount from the fee award.

### 3. *PACA Claims Procedure*

Defendants also argue that VLM's time relating to the preparation of it PACA claims procedure motion. It argues that since a PACA claims procedure was never effectuated VLM should not be able to recover any time dedicated to this task. Alternatively, Defendants also contend that these hours were not necessary because they submitted Defendant ITC's accounts payable to VLM.

First, the Court disagrees with Defendants' assertions regarding the fact that a claims procedure was unnecessary since ITC turned over its accounts payable. The function of a PACA claims procedure is not merely to identify creditors – it is also to provide notice and deadlines to unpaid creditors who seek to recover funds. *See*, *generally, Sato & Co., LLC v. S&M Produce, Inc.*, No. 2010 U.S. Dist. LEXIS 8775 (N.D. Ill. Feb. 2, 2010). Moreover, it is undisputed that VLM presented its Motion for the PACA claims procedure on November 27, 2012. *See* ECF No. 31.

- 6 -

While the procedure was never instituted, the Court does not find VLM's motion entirely unnecessary.

That said, the Court finds VLM's 14.7 claimed hours excessive. VLM asserts that it spent 4.1 hours on October 30, 2012 preparing the claims procedure motion and claims it spent an additional 5.4 hours revising the motion on November 9, 2012. This time is all in addition to the 8.3 hours VLM spent "conferencing with co-counsel" on the matter. In light of the fact that VLM's counsel, Michael Keaton, has extensive experience with PACA claims, the Court finds 14.7 hours on such a task excessive. Accordingly, the Court reduces the number of hours billed related to the drafting, reviewing, and revising the claims procedure motion to 7 hours and subtracts $1,198.50 from the fee award. *See Sato & Co., LLC, v. S&M Produce, Inc.*, No. 08-C-7352, 2010 U.S. Dist. LEXIS 85142, at *16-17 (N.D. Ill. Aug. 16, 2010) (reducing the 13.3 hours counsel claimed to have spent on a PACA claims procedure order to 8 hours because the firm had significant PACA experience and standard PACA claims procedure documents).

## B. Clerical Hours

Defendants next argue that an additional $9,395.00 should be reduced from VLM's fee petition because the time entries indicate that these were for tasks that were "clerical in nature" and "easily delegable to non-professional assistance." Defs.' Opp.

- 7 -

and Objection to Pl.'s Fee Pet. at 12. VLM concedes that some of Defendants' objections have merit and agrees to reduce this amount by $1,518.00. However, VLM argues that the remaining $7,877.00 is appropriate because the entries that correspond with this amount could not have been performed by a non-attorney.

First, Seventh Circuit precedent is clear in disallowing hours expended by counsel on clerical or non-legal work that is "delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554-55 (7th Cir. 1999). After reviewing the entries Defendants have objected to as clerical, the Court finds 20.7 hours uncompensable. Such hours were spent conferencing with service processors, communicating with the Court's staff, preparing summons, and filing documents. Time spent on these tasks is not appropriate in a fee petition. *See Sato & Co., LLC*, 2010 U.S. Dist. LEXIS 85142 at *13-14. Accordingly, the Court reduces VLM's fee award by an additional $4,604.50.

### C. **Excessive or Duplicative Hours**

Defendants claim an additional 57.5 hours should be removed from VLM's fee award because these hours are for entries that are excessive or redundant. Specifically, Defendants argue that all of VLM's entries relating to amending, correcting, or revising documents should be struck. VLM disagrees.

After reviewing the relevant entries Defendants have objected to, the Court finds 19.9 hours duplicative. As such, the Court subtracts these hours from the fee award.

As an example, VLM has three separate entries relating to the preparation of a two paragraph compliance letter to TAB Bank. Three entries for such a small task are both duplicative and excessive. As such, the Court reduces the time spent on this task from 2.1 hours to .7 hours. As another example, VLM claimed it spent nearly three hours reviewing and amending its Complaint. The Amended Complaint added only one count. *See* ECF No. 22. As such, the Court finds the entries for this task redundant and reduces VLM's hours accordingly.

The Court also refuses to award VLM money for the time it spent correcting a pleading error where they listed the wrong party. This leads to an additional deduction of 2.5 hours.

Aside from the aforementioned 19.9 hours, the Court disagrees with the remainder of Defendants' objections. The time VLM spent reviewing USDA records and conducting an onsite inspection of Defendant ITC's warehouse is neither redundant nor duplicative. These hours are compensable. The Court also finds Defendants' objections regarding the time VLM spent researching a case that Defendant cited in his post-trial brief completely meritless. To refresh Defendants' recollection, it cited a bankruptcy case, *G&G Peppers, LLC. v. Ebro Foods, Inc.*, 424 B.R.

- 9 -

420 (Bankr. N.D. Ill. 2010) for a proposition that was reversed by the district court on appeal. The Court pointed this out in its March 5, 2013 opinion. To now argue that VLM's time spent researching *Ebro Foods* was unreasonable is ludicrous. Indeed, Defendants would have been better served spending some time researching that case themselves.

After reviewing the relevant entries Defendants claim are duplicative, the Court subtracts 19.9 of the 57.7 hours. This amounts to a reduction of $5,128.50.

### D. Internal Attorney Conferences

Defendants also object to the 18.7 hours billed for internal conferences between VLM's counsel. Defendants seem to argue that these hours are unreasonable because they merely entail time VLM's lead counsel spent "supervising" his associate. Defs.' Opp. and Objections to Pl.'s Fee Pet. at 20. VLM responds that it has excluded "supervision" time and the hours objected to constitute substantive discussions regarding how the legal work for the case would be divided. VLM's counsel has provided an affidavit averring the same. *See* ECF No. 76-1. The Court finds this and the fact that VLM has produced an affidavit stating that it has paid a substantial portion of the bills its counsel has charged persuasive in determining the reasonableness of the fees here. *See* ECF No. 76-2; *see also Matthews*, 642 F.3d at 572 (stating in a contractual fee-shifting statute "a willingness to

- 10 -

pay is an indication of commercial reasonableness"). Defendants' unsupported general objections are insufficient to overcome this evidence. Therefore, the Court declines to strike these hours from VLM's fees.

### E. Inadequate Documentation

Finally, Defendants contend that 17.6 hours in the fee petition should be struck because the entries provide insufficient detail. However, as the Seventh Circuit instructs, "fee-shifting contracts require reimbursement for commercially-reasonable fees no matter how the bills are stated." *Matthews*, 642 F.3d at 572. Indeed, in *Matthews* the Seventh Circuit rejected a party's argument that the district court erred in awarding fees because the petition lacked any description for the work performed. *Id.* Here, VLM has provided adequate descriptions. As such, the Court declines to strike these hours from the award.

After subtracting the unreasonable hours, the Court awards $89,061.50 in fees.

### F. Witness Travel Expenses

In the fee petition, VLM also requests $4,485.27 in witness travel expenses. VLM has provided an affidavit from Witold Filemonowicz, VLM's Vice-President, swearing that the said amount reflects the expenses he incurred in his two trips from Canada to

Chicago.  See Pl.'s Fee Pet., Ex. 1, ECF No. 76-1.  Defendants do not object to such expenses.  Accordingly, the Court awards $4,485.27 in witness travel expenses.

### G.  Costs

Defendants also object to VLM's costs.  Defendants argue that such costs should not be awarded because they are not documented adequately.  At the time Defendants filed their objections, they were correct – the costs were not supported with documentation.  However, in response to Defendants' objections, counsel for VLM submitted partial documentation.  Therefore, many of the claimed costs are documented, and in this Court's judgment are reasonable.  Those claimed costs which are not are addressed below.

### 1.  Copy Expenses

Counsel for VLM seeks $1,472.30 in copy expenses.  However, VLM has failed to submit an invoice or bill for these charges.  Moreover, VLM fails to identify what documents were copied, thus making it impossible to discern whether these costs were reasonably necessary.  As such, the Court denies these costs for inadequate documentation.  *See Sato & Co.*, 2010 U.S. Dist. LEXIS 85142 *22-24 (denying copy costs in a PACA case due to inadequate documentation).

### 2. Fax Expenses

VLM also seeks to recover $51.00 in fax expenses. VLM avers that it charges $1.00 per page to send an outgoing fax. However, VLM fails to provide any documentation regarding what 51 pages were faxed and to whom they were faxed to. Accordingly, the Court refuses to award these expenses. *See id.*

### 3. Research

VLM also seeks to recover $51.00 for research. However, VLM has failed to provide any supporting documentation for this expense. While the Court finds it entirely plausible that VLM expended such sums on research, the ease with which it could have produced a bill from WestLaw or any other legal research company causes the Court to reduce VLM's costs for such expenses.

### 4. Other Costs

The Court notes that even though VLM failed to provide detailed documentation of its travel expenses, the Court finds $568.99 reasonable. The Court finds this particularly true given that counsel for VLM appeared in Court on at least seven separate dates and travels to the Dirksen Federal Building from the Chicagoland suburbs. The Court finds these costs reasonable given that the contract provision at issue here states "[b]uyer agrees to pay all costs of collection. . . ." *See* Pl.'s Reply to Defs.' Opp. and Objection, Ex. A, ECF No. 102-1 at 1.

Additionally, the Court awards the $95.75 incurred for long distance phone charges despite the lack of documentation. It is undisputed that VLM is located in Canada. It is reasonable to assume that VLM's counsel incurred $95.75 in international telephone charges when communicating with his client over the past eight months.

After reducing the aforementioned amounts, the Court awards $1,387.75 in costs. Adding this total with the Court's determination regarding attorneys' fees and witness travel expenses total $94,934.27.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, the Court grants in part and denies in part VLM's Petition for Attorneys' Fees and Awards.

VLM is awarded the following amounts: (1) $89,061.50 in attorneys' fees; (2) $4,485.27 in witness travel expenses; and (3) $1,387.50 in costs for a total award in the amount of $94,934.27.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:     7/11/2013

- 14 -